## WILL INGRAM v. STATE.

No. A-31.   Opinion Filed April 5. 1910.

(108 Pac. 552.)

1.  **APPEAL—Review of Evidence—Sufficiency.** Under our system of jurisprudence, it is the exclusive province of the jury to determine whether the evidence tending to prove the guilt of the defendant is so lacking in convincing force as to leave an intelligent and discriminating mind to doubt as to the truth of the charge contained in the indictment, and in reviewing questions of fact upon appeal to the Criminal Court of Appeals, if there is a fair conflict in the evidence, or it is such that different inferences can be properly drawn from it, the determination of the jury will not be interfered with, unless it is clearly against the weight of evidence, or appears to have been influenced by passion or prejudice.

2.  **RAPE—Sufficiency of Evidence.** See opinion for evidence held sufficient to sustain a verdict of guilty without capital punishment for the crime of rape.

(Syllabus by the Court.)

*Error from District Court, Carter County.*

Will Ingram was convicted of crime, and brings error. Affirmed.

*Cruce, Cruce & Blakemore* and *W. B. Johnson,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for the State.

DOYLE, JUDGE.   Plaintiff in error, Will Ingram (hereinafter designated the "defendant"), was indicted jointly with

his brother, Tom Ingram, in the United States court for the Indian Territory for the Southern district of said territory, at the April term, 1907. Said indictment charges that the defendant, on the 17th day of February, A. D. 1907, did upon one Enid Kerr commit the crime of rape and that the said Tom Ingram standing by, did aid, abet, and assist the said Will Ingram the said felony and rape then and there to do and commit. Under the provisions of the Enabling Act and of the Constitution of the state of Oklahoma, the case was tried in the district court of Carter county. Upon the trial so had the jury returned a verdict of guilty, without capital punishment, against the defendant Will Ingram, and a verdict of guilty, fixing the penalty at imprisonment in the penitentiary for five years against the defendant Tom Ingram. Motion for new trial was filed and overruled. On the 16th day of June, 1908, in conformity with the verdict, the defendant was by the court sentenced to imprisonment at hard labor in the state prison for the term of his natural life. The defendant appealed by filing on October 31, 1908, in this court a petition in error with case-made attached. No briefs have been filed. Mr. Johnson of counsel made an oral argument, in the main contending that the verdict was against the weight of the evidence, and that hence justice requires a new trial.

Notwithstanding the appeal has been substantially abandoned, nevertheless, in deference to the gravity of the case, we have deemed it our duty to fully and carefully examine the record. Enid Kerr, the victim of the assault, at the time 12 years of age, lived with her stepfather about two miles west of Poolville, in what is now Carter county, and the defendant's home was about 300 yards south. The testimony on the part of the prosecution proves that on the day alleged, which was Sunday about the hour of noon, Enid Kerr, with her brothers, aged 7 and 10 years, went to a point on a creek branch between her home and the Ingram home, and while there she was inhumanly assaulted and ravished.

Enid Kerr testified that she was there digging with a piece of

broken hoe for "tooth brushes", when Will and Tom Ingram appeared; that the defendant grabbed her, choked her, and put his hands over her mouth; that Tom Ingram chased her little brothers away, and then held her while the defendant ravished her; that the defendant then held her while his brother Tom ravished her; that they then ran off, the defendant going down the branch, and Tom Ingram going towards his home; that as soon as they left, her brothers returned and went with her to their home; that only her mother was at home; and that her mother laid her on the bed and sent for a doctor. She also testified that she had known the defendant for about six years.

Mrs. Payne testified: That Enid Kerr was her daughter. That in the morning of the day alleged in the indictment her husband went to Elk. That about the noon hour her children went to a little branch, and within an hour her daughter came back crying and told her what the defendants had done. That she laid her on the bed and found that she was bleeding from the inside of her privates. That she then ran to the door and saw Tom Ingram coming out of the branch going toward his home. That she ran right down into the branch and lost sight of him. That she went on to the Ingram home and asked Mrs. Ingram, "Where's those wretched boys at?" Mrs. Ingram said, "Will has gone to Elk, and Tom went with Ed after some cows." That she turned to leave and Mrs. Ingram said, "Stop! What is the matter?" And witness said: "I have got no time to stop. I have got to have a doctor." And ran back home. She then sent her two little boys to Poolville, telling them to tell their papa to come and bring the doctors. That soon her husband returned, and Dr. Irby and Dr. Norris reached there soon after.

Lee Payne testified: That he was 10 years old. That on said day, with his sister and brother he went to a branch near their house, and with his brother he stopped to swing on a grapevine, while his sister with an old piece of a hoe went to dig tooth brushes; that they heard her scream, and they ran down to her and saw the defendant holding her, and that Tom Ingram was with him and chased them back where they could not see their

sister. Shortly they saw them leave. That Will went down a cow trail and Tom went up toward his home. That they returned then to where their sister was and found her lying on the ground and she was crying. That they started to the house with her, and she staggered and fell. That they sat there a little while and then returned to the house. That his mother sent him and his brother to Elk after the doctor. That they met their father and returned home with him.

Dr. Norris testified that on Sunday, the 17th day of February, 1907, he was called with Dr. Irby to go to the Payne home to attend Enid Kerr; that he arrived there between 2 and 3 o'clock; that he found from his examination that she had bled pretty freely; that the hymen had been ruptured, and the perineum lacerated; that she was still bleeding from the rupture, and the laceration; and that he returned that night and further treated her.

Dr. Irby testified that he was called on said day with Dr. Norris to treat Enid Kerr, and his examination showed a rupture of the hymen and also of the perineum.

E. K. Pool testified: That he lived at Poolville. Was acquainted with the defendants Will and Tom Ingram 9 or 10 years. That Mr. Payne lived about a mile and a half southwest of Poolville. That the defendants' home was 300 yards south from Payne's. That there was a branch between. About 8 o'clock p. m. on the 17th day of February, 1907, he went with others to Ingram's house and arrested Will and Tom. That Will Ingram had a scratch under his left eye, and that he asked him, "What scratched your face there?" and he said he had run against a wire up in the lot that morning.

As a defense the defendants sought to prove an alibi, and that it was a case of mistaken identity of the defendants as the parties who committed the crime. More than 20 witnesses testified to the presence of the defendant in and about the village of Elk on the day that the crime was committed. However, a careful examination of this testimony shows the absence of the defendant for a brief period about the hour of noon on said day.

The defendant or his codefendant did not testify upon the trial.

Upon a careful reading of the evidence in this case, there can be no doubt but that the verdict of the jury is amply supported, if they believed the evidence given on the part of the prosecution. That the jury did believe the evidence on the part of the prosecution is clearly established by the fact that they found the defendant guilty of the crime charged.

The prosecutrix testified positively to the identity of the defendants, as the parties who ravished her. In this she was corroborated by her little brother, and we can find no sufficient reason for believing that this testimony is not worthy of belief. Without going into a detailed discussion of the instruction given, it is sufficient to say that they correctly and fully expounded the law of the case, including the defense of alibi. The defendant was represented by counsel preeminent in their profession, and all that ability and skill could do was done for him.

From the record before us it appears that justice has been done, and the judgment ought not to be set aside, except for some plain error in the proceedings, which was, or might be, prejudicial to the defendant. We are unable to find any such error in the record.

Wherefore the judgment of the district court of Carter county, as to the defendant Will Ingram, is affirmed.

FURMAN, PRESIDING JUDGE, and OWEN, JUDGE, concur.